UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMEURAHMAN NOORI,<br><br>                        Petitioner,<br><br>  v.<br><br>CHRISTOPHER LAROSE, *et al.*,<br><br>                        Respondents. | Case No. 25-cv-03006-BAS-MMP<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1)** |

      Petitioner Jameurahman Noori is a citizen of Afghanistan. (Petition ("Pet.") ¶ 2, ECF No. 1.) He had family who worked with the U.S. Military effort in Afghanistan. (*Id.*) He spoke English, so he applied and was on the waitlist to become a translator for the U.S. military at Bagram Air Base. (*Id.*) The Taliban learned of this application and approached Petitioner's parents and village leaders, threatening him if he continued with his application. (*Id.*) Petitioner fled Afghanistan and made his way to Mexico. (Pet. ¶ 3.)

      From Mexico, Petitioner applied and, on June 17, 2024, was granted humanitarian parole into the United States so he could pursue an asylum petition. (Pet. ¶¶ 1, 3, 4.) The humanitarian parole was good for two years, expiring in June 2026. (*Id.*) Petitioner filed and was pursuing his asylum petition. (*Id.*) On October 3, 2025, despite this humanitarian parole, Immigration and Customs Enforcement ("ICE") detained him as he attempted to

enter Camp Pendleton Marine Base for a ride-hailing service customer. (Pet. ¶ 5.) Three days later, on October 6, 2025, Petitioner's humanitarian parole was revoked, and Petitioner was given a new Notice to Appear. (Pet. ¶ 41.)

Relying on this new Notice to Appear, the Government now argues that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (ECF No. 4.) Petitioner files this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, seeking release from custody under the humanitarian parole provision while his asylum application is pending. (Pet.) The Government argues the Petition is jurisdictionally barred under 8 U.S.C. §§ 1252(g) and 1252(b)(9), and that Petitioner is subject to mandatory detention under § 1225(b)(2)(A). For the reasons stated below, the Court **GRANTS** the Petition and orders Petitioner released on humanitarian parole pending adjudication of his asylum application.

## I. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). "The traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates he or she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The writ is available to non-citizens detained within the United States. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

At the threshold, Respondents argue Petitioner is challenging his removal proceedings, and thus, his claim is not cognizable as a habeas corpus petition. (ECF No. 4.) The Court disagrees. Petitioner is challenging the revocation of his humanitarian parole while his immigration proceedings advance. Thus, he is challenging his detention in custody while he attempts to seek asylum. Since Petitioner is claiming that he is illegally being held in custody, the writ is the appropriate vehicle for his claim.

## II.     JURISDICTION

Respondents argue that 8 U.S.C. §§ 1252(g) and 1252(b)(9) strip this Court of jurisdiction to proceed. Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

The general rule is to "'resolve any ambiguities in a jurisdiction-stripping statute [such as Section 1252(g)] in favor of the narrower interpretation,' and by the 'strong presumption in favor of judicial review.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 995 (9th Cir. 2025) (quoting *Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018)). Thus, the Supreme Court has ruled Section 1252(g) applies only to three discrete actions: commencing proceedings, adjudicating cases, or executing removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). "Instead of 'sweep[ing] in any claim that can technically be said to arise from the three listed actions,' the provision 'refers to just those three specific actions themselves.'" *Ibarra-Perez*, 154 F.4th at 995 (alteration in original) (quoting *Jennings v. Rodriguez,* 583 U.S. 281, 294 (2018)). "There are of course many other decisions or actions that may be part of the deportation process . . ." that are not one of these three. *See Reno*, 525 U.S. at 482 (listing possibilities). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez*, 154 F.4th at 997.

In this Petition, Petitioner is not contesting the commencement or adjudication of removal proceedings against him, nor is he raising an issue with respect to the execution of removal. His detention pursuant to 8 U.S.C. § 1225(b)(2) may be during, but is nonetheless independent of, the removal proceedings. Thus, this Court is not stripped of jurisdiction by Section 1252(g).

Section 1252(b)(9) states, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising

from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section."

"[C]laims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016). Thus, in *Nielsen v. Preap*, 586 U.S. 392 (2019), the Supreme Court held Section 1252(b)(9) inapplicable when the petitioners were not asking for review of an order of removal, were not challenging the decision to detain them in the first place or to seek removal, and were not challenging any part of the process by which removability would be determined. *Id.* at 402 (citing *Jennings*, 583 U.S. at 294).

Here, Petitioner does not challenge the Government's authority to remove him from the United States in this Petition. Instead, he challenges the revocation of his humanitarian parole and the Government's decision to subject him to mandatory detention under Section 1225(b)(2). Thus, Section 1252(b)(9) does not provide a jurisdictional bar.

Finally, under the Suspension Clause, "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. In determining the reach of the Suspension Clause, the court is required to consider "(1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ." *Boumediene v. Bush*, 553 U.S. 723, 766 (2008).

For the first factor, although Petitioner is not a citizen, he was paroled into the United States upon a finding that he was not a flight risk or a danger to the community. He has remained here for more than a year and in that time has received a work authorization and has developed ties to the community. If Section 1252 were to deprive the Court of jurisdiction to review Petitioner's detention, Petitioner would have no ability to challenge his detention and no right to challenge Respondents' decision to terminate his parole.

Additionally, Petitioner was apprehended and detained within the United States. Finally, Respondents have not presented any credible arguments that any practical obstacles prevent resolving Petitioner's application for a writ of habeas corpus. There is no evidence that Petitioner is a danger to the community or a flight risk—in fact, Respondents decided to parole Petitioner when he arrived without ties to the community after determining that he did not have any criminal history and then approved a work authorization. It also appears that Petitioner has complied with the law during his time in the United States. Thus, even if Section 1252 precluded the Court from reviewing Respondents' decision to terminate Petitioner's parole and detain him, the Court would have jurisdiction to review the legality of Petitioner's detention in light of the Suspension Clause. *See Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *8–9 (S.D. Cal. Oct. 1, 2025).

## III. LEGALITY OF DETENTION

Petitioner argues that he is being detained in violation of his rights under the Due Process Clause of the Fifth Amendment and in violation of the Administrative Procedure Act ("APA"). (Pet.) The Court agrees on both grounds.

### A. Due Process Clause

The Fifth Amendment guarantees that an individual shall not be deprived of liberty "without due process of law." U.S. Const. amend. V. The Amendment applies to noncitizens such as Petitioner detained within the United States. *Zadvydas*, 533 U.S. at 687; *see also Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

"The Due Process clause generally 'requires some kind of a hearing before the State deprives a person of liberty.'" *Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *3 (S.D. Cal. Nov. 3, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). "Although the initial decision to detain or release an individual may be within the government's discretion, 'the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be

revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Id.* (alterations in original) (quoting *Pinchi v. Noem*, No. 25-cv-5632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025)).

Because Petitioner had a protected liberty interest once he was released on humanitarian parole, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine whether the procedures afforded him are constitutionally sufficient to satisfy the Due Process Clause, the Court considers: (1) the private interest affected, (2) "the risk of an erroneous deprivation of such interest," along with "the probable value, if any, of additional or substitute procedural safeguards," and (3) the Government's interest, including "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds all three factors support a finding that the Government's revocation of Petitioner's humanitarian parole without notification, individual consideration, reasoning, or an opportunity to be heard violated his Due Process rights. First, "[f]reedom from imprisonment . . . lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Second, without notice or an opportunity to be heard, the risk of erroneous revocation is high. The circumstances surrounding Petitioner's release on humanitarian parole do not appear to have changed. No reason has been given for the change. Procedural safeguards would give Petitioner an opportunity to learn and address the reasons for the change and to make sure that his release is not being revoked arbitrarily. Finally, the Government fails to point to any fiscal or administrative burdens it would suffer if it were required to provide notice and reasoning for the change. Hence, Petitioner's claim under the Due Process Clause is persuasive.

### B.   Violation of the APA

Furthermore, the Government failed to comply with its own regulations in revoking Petitioner's parole. "Under the APA, an agency action may be set aside if it is arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with the law." *Noori*, 2025 WL 2800149, at *12 (citing 5 U.S.C. § 706(2)(A)).

Under the Government's regulations, humanitarian parole may only be terminated "upon accomplishment of the purpose for which parole was authorized," or when ". . . neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i). In addition, termination requires "written notice to the alien." *Id.* Petitioner was given humanitarian parole to allow him to seek asylum given his history with the Taliban in Afghanistan because of his association with the U.S. Military. He has not yet accomplished that purpose, nor does the Government argue that humanitarian reasons or public benefit no longer warrant Petitioner's continued presence in the United States. In fact, the Government offers no explanation, in writing or otherwise, as to why the humanitarian parole was revoked. Thus, Petitioner's challenge based on the APA is likewise persuasive.

In sum, Petitioner is being held in violation of federal law. His detention following revocation of his humanitarian parole violates both the Due Process Clause of the Fifth Amendment and the APA. Hence, his Petition is **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus is **GRANTED.** The Court issues the following writ:

> The Court **ORDERS** Respondents to release Petitioner Jameurahman Noori (A244-585-606) from immigration custody on the same conditions of humanitarian parole that were granted on June 17, 2024, while he advances his asylum claim.

Finally, the Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

**DATED: November 26, 2025**

Hon. Cynthia Bashant, Chief Judge
United States District Court